## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| Covenant Imaging, LLC | ) | 3:20-CV-00593 (KAD) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Viking Rigging & Logistics, Inc., et al, | ) | |
| *Defendants*. | ) | March 16, 2021 |

## MEMORANDUM OF DECISION RE: DEFENDANT PIONEER TRANSFER'S MOTION TO DISMISS (ECF NO. 123)

Kari A. Dooley, United States District Judge

This action arises out of an allegedly botched delivery of an MRI machine which resulted in the MRI machine being rendered useless. Plaintiff Covenant Imaging, LLC ("Covenant") purchased the MRI machine and arranged for it to be delivered from Connecticut to a facility in North Carolina through Defendant Viking Rigging & Logistics, Inc. ("Viking"). Covenant allegedly later learned that Defendant Pioneer Transfer, LLC ("Pioneer") and Defendant Eagle Express Inc. ("Eagle") were hired by Viking to assist with the delivery. Accordingly, Covenant brings this action against Viking, Eagle, and Pioneer seeking damages resulting from the botched delivery. Specifically, Covenant asserts two counts against Pioneer: (1) a violation of the Carmack Amendment, 49 U.S.C. § 14706 (Count III) and (2) negligence (Count IV). Pending before the Court is Pioneer's motion to dismiss both counts pursuant to Rule 12(b)(6) for failure to state a claim. For the following reasons, Pioneer's motion to dismiss is DENIED.

**Allegations**

The following is as alleged in Covenant's second amended complaint ("SAC"). On July 25, 2017, Covenant purchased a Siemens Espree MRI machine from Nationwide Imaging Services for $345,000 located at Advanced Radiology Consultants in Stamford, Connecticut. Thereafter,

on August 14, 2017, Covenant and Viking entered into a contract to transport the MRI machine from Stamford to Duke Medical Equipment International in Pisgah Forest, North Carolina. Viking promised to deliver the MRI machine in good condition to Covenant in North Carolina on or around August 17, 2017. Viking represented itself to Covenant as the actual carrier of the MRI machine and the employer of the drivers who transported it. Viking did not seek to limit its liability to Covenant for loss or damage.

However, without consulting Covenant and without having any authority to do so, Viking arranged for Pioneer and Eagle to transport the MRI machine. Viking did not disclose to Covenant that it did not itself transport the MRI machine and had arranged for its agents, or brokered others, to do so until after the claim and loss occurred and was reported to Viking. Specifically:

> Viking brokered Covenant's shipment of the [MRI machine] to Pioneer, or arranged for Pioneer to act as Viking's agent with respect to the shipment. Viking tasked Pioneer with securing a truck and driver for Covenant's shipment. Pioneer informed Viking that it would sub-broker Covenant's shipment to Eagle, or arrange for Eagle to act as Viking's and Covenant's agent with respect to the shipment. Pioneer thus tasked Eagle with securing a truck and driver for Covenant's shipment.

(ECF No. 99 ¶ 34). Viking, among other things, told Pioneer and Eagle that neither could limit any party's liability to Covenant for loss or damage with respect to the shipment. Indeed, neither Pioneer nor Eagle sought to limit its liability to Covenant.

As Viking and Covenant's agent, Pioneer sub-brokered the shipment by tasking transportation of the MRI machine to Eagle. Accordingly, Eagle agreed to act as the carrier for the shipment of the MRI machine, specifically agreeing to retrieve, load, and transport the MRI machine from Connecticut to its destination in North Carolina—"Eagle identified, secured, and retained or employed a driver and truck to transport the [MRI machine]." (*Id*. ¶ 39).

Defendants—"either Eagle as the carrier after arrangement or brokerage by Pioneer and Viking, or all Defendants acting in concert"—picked up the MRI machine in good condition from

Stamford on August 16, 2017. (*Id.* ¶ 44). However, on August 17, 2017, Defendants delivered the MRI machine in damaged condition to Duke Medical in North Carolina. "A full inspection of the unit conducted by qualified experts revealed that the [MRI machine] had suffered an impact and severe shock during transportation from Connecticut to North Carolina, which resulted in a thermal short to the magnet, rendering the unit unusable." (*Id.* ¶ 49). The damage resulted in a "total loss." (*Id.* ¶ 54).

Covenant attempted to recover its loses from Viking's insurance company after Viking refused to file an insurance claim for the loss. Ultimately, Viking's insurer declined coverage. Thereafter, on August 8, 2019, Covenant brought this action against Viking in the Southern District of Florida. Viking, through its pleadings, for the first time identified Pioneer's and Eagle's roles in the shipment. Viking alleges that it brokered the shipment and arranged for Eagle and Pioneer to transport the MRI machine. Viking further alleges that the MRI machine was damaged while under Pioneer's or Eagle's care and control. Accordingly, by amended complaint dated November 26, 2019, Covenant joined Pioneer and Eagle as defendants. In their answers, Defendants allege that Viking brokered the shipment to Pioneer who brokered it to Eagle. Viking and Eagle also claim that the MRI machine was damaged in Connecticut when it was being moved onto the Eagle vehicle or that it was previously damaged at the medical facility in Connecticut. Eagle further claims that Pioneer agreed to limit Eagle's liability to Covenant.

In January 2020, Pioneer moved to dismiss the claims against it based on lack of personal jurisdiction. The court granted Pioneer's motion to dismiss for lack of personal jurisdiction on February 14, 2020. Thereafter, on April 30, 2020, on Covenant's motion, this matter was transferred to the District of Connecticut. On May 20, 2020, Covenant filed a motion to amend the amended complaint to cite in Pioneer as a defendant once again, which the Court granted.

Covenant filed its SAC naming Pioneer as a defendant on June 3, 2020. Therein, Covenant asserts two counts against Pioneer: (1) a violation of the Carmack Amendment, 49 U.S.C. § 14706 (Count III) and (2) negligence (Count IV).

On July 30, 2020, Pioneer filed the instant motion to dismiss both counts pursuant to Rule 12(b)(6) for failure to state a claim. The Court held oral argument on the motion on October 20, 2020.

**Standard of Review**

The standards for considering motions to dismiss under Rule 12(b)(6) are well-established. "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556). Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to a presumption of truth. *Iqbal*, 556 U.S. at 678. Nevertheless, the Court must accept well-pleaded factual allegations as true and draw "all reasonable inferences in the nonmovant's favor." *Interworks Sys. Inc. v. Merch. Fin. Corp.*, 604 F.3d 692, 699 (2d Cir. 2010).

**Discussion**

Pioneer seeks dismissal of Covenant's Carmack Amendment and negligence claims. As to the Carmack Amendment, Pioneer asserts that Covenant has only alleged that Pioneer acted as a broker in the transaction and therefore the claim must be dismissed because the Carmack

Amendment does not apply to brokers. And Pioneer moves to dismiss Covenant's negligence claims on the grounds that such claims are expressly preempted by the Interstate Commerce Commission Termination Act ("ICCTA"), 49 U.S.C. § 14501(b)(1), and the Federal Aviation Administration Authorization Act ("FAAAA"), 49 U.S.C. § 14501(c)(1), and impliedly preempted by the Carmack Amendment.

**Carmack Amendment Claim**

The Carmack Amendment "addresses the subject of carrier liability for goods lost or damaged during shipment, and most importantly provides shippers with the statutory right to recover for the actual loss or injury to their property caused by any of the carriers involved in the shipment." *Cleveland v. Beltman N. Am. Co.*, 30 F.3d 373, 377 (2d Cir. 1994) (emphasis omitted). In relevant part, the Carmack Amendment provides:

> A carrier providing transportation or service subject to jurisdiction under subchapter I or III of chapter 135 shall issue a receipt or bill of lading for property it receives for transportation under this part. That carrier and any other carrier that delivers the property and is providing transportation or service subject to jurisdiction under subchapter I or III of chapter 135 or chapter 105 are liable to the person entitled to recover under the receipt or bill of lading. The liability imposed under this paragraph is for the actual loss or injury to the property caused by (A) the receiving carrier, (B) the delivering carrier, or (C) another carrier over whose line or route the property is transported in the United States or from a place in the United States to a place in an adjacent foreign country when transported under a through bill of lading[.]

49 U.S.C. § 14706(a)(1). A "carrier" is "a motor carrier, a water carrier, and a freight forwarder." 49 U.S.C. § 13102(3). A "motor carrier" is "a person providing motor vehicle transportation for compensation." 49 U.S.C. § 13102(14). Relevant to Pioneer's motion to dismiss, "courts have repeatedly held that the Carmack Amendment does not apply to brokers." *Active Media Servs., Inc. v. CAC Am. Cargo Corp.*, No. 08-CV-6301 ER, 2012 WL 4462031, at *3 (S.D.N.Y. Sept. 26, 2012) (collecting cases). A "broker" is "a person, other than a motor carrier or an employee or

agent of a motor carrier, that as a principal or agent sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for compensation." 49 U.S.C. § 13102(2).

Pioneer argues that Covenant failed to adequately plead that Pioneer was a "carrier." Rather, Pioneer asserts that Covenant alleged that Eagle was the "carrier" and that Pioneer was a "broker." Therefore, because the Carmack Amendment does not apply to brokers, Covenant's Carmack Amendment claim should be dismissed. Covenant responds that it adequately plead that Pioneer exerted sufficient control over the MRI machine to be a carrier subject to Carmack liability.

"The difference between a carrier and a broker is often blurry." *AIG Europe (Netherlands), N.V. v. UPS Supply Chain Sols., Inc.*, 765 F. Supp. 2d 472, 483 (S.D.N.Y. 2011) (internal quotation marks omitted). Indeed, "if [a party] accepted responsibility for ensuring delivery of the goods, *regardless of who actually transported them*, then [the party] qualifies as a carrier." *CGU Int'l Ins., PLC v. Keystone Lines Corp.*, No. C-02-3751 SC, 2004 WL 1047982, at *2 (N.D. Cal. May 5, 2004) (emphasis added). "If however [the party] merely agreed to locate and hire a third party to transport the machines, then it was acting as a broker." *Id.*; *see also* 49 C.F.R. § 371.2(a) ("Broker means a person who, for compensation, arranges, or offers to arrange, the transportation of property by an authorized motor carrier. Motor carriers, or persons who are employees or bona fide agents of carriers, *are not brokers within the meaning of this section when they arrange or offer to arrange the transportation of shipments which they are authorized to transport and which they have accepted and legally bound themselves to transport*." (emphasis added)).

The Court agrees with Covenant that it adequately plead that Pioneer was a "carrier."[1] In the SAC, Covenant plausibly alleges that Pioneer exerted sufficient control over the shipment to be a carrier and did more than simply hire a third party for transportation. Indeed, Covenant alleges that "Viking arranged for Pioneer and Eagle, as separate entities or as Viking's agents, to transport the machinery." (ECF No. 99 ¶ 32). Moreover, in many allegations, Covenant uses the phrase "either Eagle as the carrier after arrangement or brokerage by Pioneer and Viking, or all Defendants acting in concert" to indicate Pioneer's participation as a carrier. (*Id.* ¶¶ 43, 44, 46, 52). For example, Covenant alleges that "Defendants—either Eagle as the carrier after arrangement or brokerage by Pioneer and Viking, or all Defendants acting in concert—failed to protect the MRI unit from damage while in transit while it was in their care and custody, and it failed to deliver the equipment in the same order and condition as when they received it." (*Id.* ¶ 52). And as noted, whether one acts as a broker or a carrier is a very fact intensive inquiry. *Nipponkoa Ins. Co.*, 2011 WL 671747, at *5. Accordingly, Covenant's allegations are sufficient to move forward against Pioneer as a "carrier" pursuant to the Carmack Amendment.

In the SAC, given the still uncertain nature of Pioneer's role in the shipment of the MRI machine, Covenant also alleges that Pioneer brokered the shipment to Eagle. As a result, Pioneer

---

[1] The Court declines to treat Pioneer's motion as a motion for summary judgment "based upon Pioneer's submission of its Chief Operating Officer, Kari Dobrovolny's, affidavit which factually establishes Pioneer's status as a broker." (ECF No. 123-1 at 8 n.3). Rule 12(d) "gives district courts two options when matters outside the pleadings are presented in response to a 12(b)(6) motion: the court may exclude the additional material and decide the motion on the complaint alone or it may convert the motion to one for summary judgment under Fed. R. Civ. P. 56 **and afford all parties the opportunity to present supporting material**." *Kopec v. Coughlin*, 922 F.2d 152, 154 (2d Cir. 1991) (internal citations omitted; emphasis added). However, "[t]he nonmoving party must have had the opportunity to discover information that is essential to his opposition to the motion for summary judgment." *Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000) (internal quotation marks omitted). Here, Covenant has not had the opportunity to discover such information and the Court declines to consider matters outside the pleadings. In any event, "the carrier/broker inquiry is inherently fact-intensive and not well suited to summary judgment." *Nipponkoa Ins. Co. v. C.H. Robinson Worldwide, Inc.*, No. 09 CIV. 2365 PGG, 2011 WL 671747, at *5 (S.D.N.Y. Feb. 18, 2011). At oral argument, the Court advised the parties that it would be deciding Pioneer's motion under Rule 12(b)(6) standards, as set forth above.

further argues that Covenant should not be able to avoid dismissal by pleading facts in the alternative. Specifically, Pioneer argues that Covenant does not have "license to plead inconsistent assertions of facts within the allegations that serve as the factual predicates for an independent unitary claim" and that the Court "need not feel constrained to accept as truth conflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely." (ECF No. 123-1 at 7 n.2 (*quoting Barberan v. Nationpoint*, 706 F.Supp.2d 408, 413 n.3, 413 (S.D.N.Y. 2010) (internal quotation marks and citations omitted))). However, Rule 8 specifically allows such alternative pleading by providing that "[a] party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones." FED. R. CIV. P. 8(d)(2); *Lawrence v. Wilder Richman Sec. Corp.*, 417 F. App'x 11, 13 (2d Cir. 2010) (summary order) (Rule 8(d)(2) "specifically permits a party to plead inconsistent positions in the alternative, even in the same action."); *see also Padre Shipping, Inc. v. Yong He Shipping*, 553 F. Supp. 2d 328, 333 (S.D.N.Y. 2008) ("plaintiffs are allowed to assert inconsistent facts in support of alternative claims, and courts may not construe allegations regarding one claim to be an admission against another"). Thus, pursuant to Rule 8, Covenant was free to plead in the alternative that (1) Eagle acted as a carrier and Pioneer acted as a broker or (2) Eagle and Pioneer both acted as carriers. *See JAS Forwarding (USA), Inc. v. Owens Truckmen, Inc.*, No. 17CV03589ADSAYS, 2017 WL 5054715, at *6 (E.D.N.Y. Nov. 1, 2017) (noting the need for plaintiff-shipper to plead in the alternative given the uncertainty regarding defendants' status as brokers or carriers).

Pioneer's motion to dismiss Count Three, the Carmack Amendment claim, is DENIED.

**Negligence**

In Count Four, Covenant alleges that Pioneer was negligent by (1) "negligently brokering or delegating transportation of the shipment to Eagle and its agents and employees, which lacked and/or was not confirmed to have the requisite skills and expertise to undertake transportation of the shipment neither in the manner customarily required nor as specified by Covenant in connection with the shipment;" and (2) "attempting to limit or actually limiting Eagle's and/or another party's liability to Covenant with respect to loss or damage associated with the shipment, despite both instruction to not do so and without authorization by Covenant to do so." (ECF No. 99 ¶ 91). Pioneer argues that Covenant's negligence claims are preempted by federal law.

### *Express Preemption under the ICCTA and the FAAAA*

Pioneer asserts that Covenant's negligence claims are expressly preempted by the ICCTA and the FAAAA. The ICCTA provides that "no State . . . shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law relating to intrastate rates, intrastate routes, or intrastate services of any freight forwarder or broker." 49 U.S.C. § 14501(b)(1).[2] Similarly, the FAAAA provides that "a State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier . . . or any motor private carrier, broker, or freight forwarder with respect to the transportation of property." 49 U.S.C. § 14501(c)(1).

The Second Circuit Court of Appeals has not had occasion to determine whether common law negligence claims against brokers are preempted by either provision under circumstances such

---

[2] Although neither party addresses the issue, the ICCTA, on its face, does not appear to have application here. The ICCTA preempts laws relating to "intrastate" rates, routes, and services. Here, the shipment at issue was an interstate shipment from Connecticut to North Carolina. *See Factory Mut. Ins. Co. v. One Source Logistics, LLC*, No. LACV1606385JAKJPRX, 2017 WL 2608867, at *5 (C.D. Cal. May 5, 2017) (finding that defendants did not show that the ICCTA preempts plaintiff's cause of action concerning an interstate shipment).

as those alleged here. The Court is not without guidance, however. "Even when Congress expresses an intent to preempt, if the statute can plausibly be read not to preempt in an individual case, courts are to accept the reading that disfavors pre-emption." *See Interworks Sys. Inc. v. Merch. Fin. Corp.*, 604 F.3d 692, 702 (2d Cir. 2010) (internal quotation marks and citations omitted). In the ICCTA/FAAAA context, courts generally distinguish between "laws that are significantly 'related to' rates, routes, and services, even indirectly, and thus are preempted, and those that have 'only a tenuous, remote, or peripheral' connection to rates, routes, or services, and thus are not preempted." *Dilts v. Penske Logistics, LLC*, 769 F.3d 637, 643 (9th Cir. 2014) (internal citation omitted) (discussing FAAAA preemption); *see also Gordon v. New England Cent. R.R., Inc.*, No. 2:17-CV-00154, 2017 WL 6327105, at *6 (D. Vt. Dec. 8, 2017) (discussing ICCTA preemption provision regarding deregulation of rail transportation and noting that the ICCTA does not preempt state laws that have a more remote or incidental effect on rail transportation (citing *Island Park, LLC v. CSX Transp.*, 559 F.3d 96, 102–03 (2d Cir. 2009)). In so doing, courts have reasoned that "Congress did not intend to preempt generally applicable state transportation, safety, welfare, or business rules that do not otherwise regulate prices, routes, or services." *Dilts*, 769 F.3d at 644. Courts have therefore found that because "the state law of negligence is a broad law applying to hundreds of different industries with no other forbidden connection with prices, routes, and services [, negligence claims are] therefore not preempted[.]" *Factory Mut. Ins. Co.*, 2017 WL 2608867, at *7 (internal quotation marks and brackets omitted); *Nyswaner v. C.H. Robinson Worldwide Inc.*, 353 F. Supp. 3d 892, 895 (D. Ariz. 2019) (noting that a negligent hiring claim imposes a generally applicable duty of care that "applies to many industries that make hiring decisions" upon finding that plaintiff's negligent hiring claim against a broker was not preempted by the FAAAA); *Mann v. C. H. Robinson Worldwide, Inc.*, No. 7:16-CV-00102, 2017 WL

3191516, at *7 (W.D. Va. July 27, 2017) (finding that plaintiffs' negligence claims against a broker were not preempted by the FAAAA, in part, because "the state law is a general law aimed at all persons within the Commonwealth's jurisdiction that requires persons to act with reasonable care in making hiring decisions").

By way of further example, in *Works v. Landstar Ranger, Inc.*, the plaintiff sued a broker, in part, for its negligent hiring of a third-party carrier when plaintiff's buses were damaged while being transported by the carrier. No. CV 10-1383 DSF OPX, 2011 WL 9206170, at *1 (C.D. Cal. Apr. 13, 2011). In part, the broker argued that the plaintiff's negligence claim was preempted by the FAAAA. *Id.* Because the court found that plaintiff's negligence claim clearly did not relate to the broker's rates or routes, the court narrowed the question to whether the negligence claim was sufficiently related to the broker's services. *Id.* Ultimately, the court determined that plaintiff's negligence claim was not preempted by the FAAAA because it "merely [sought] to enforce a normal duty of care [which had] nothing to do with the service offerings-i.e., its schedules, origins, or destinations-by [defendant-broker] or the carriers with which it contracts." *Id.* at *2.[3]

Similarly, in *Factory Mut. Ins. Co.*, the plaintiff, subrogee of the shipper, sued a broker, in part, for negligent selection of a third-party carrier who allegedly stole the shipper's goods. 2017 WL 2608867, at *1. The court observed that while "negligence claims against brokers may have an effect on rates and services . . . state laws 'that are several steps removed from prices, routes, or services' are not preempted 'even if employers must factor those provisions into their decisions about the prices that they set, the routes that they use, or the services that they provide.'" *Id.* at *7 (quoting *Dilts*, 769 F.3d at 646). Accordingly, the court held that the plaintiff's claim was not

---

[3] The Court is aware that the Ninth Circuit Court of Appeals has since rejected this reasoning under very similar circumstances. *Miller v. C.H. Robinson Worldwide, Inc.*, 976 F.3d 1016, 1024–25 (9th Cir. 2020). Nonetheless, the Court finds this reasoning persuasive.

preempted by the FAAAA because it sought "to enforce the common law duty of reasonable care [,which] is generally applicable and does not otherwise regulate prices, routes or services in the trucking industry." *Factory Mut. Ins. Co.*, 2017 WL 2608867, at \*7; *see Dilts*, 769 F.3d at 647 ("[E]ven if state laws increase or change a motor carrier's operating costs, broad laws applying to hundreds of different industries with no other forbidden connection with prices, routes, and services—that is, those that do not directly or indirectly mandate, prohibit, or otherwise regulate certain prices, routes, or services—are not preempted by the FAAAA." (internal quotation marks, citation, and brackets omitted)).

Here, Covenant brings a negligence claim against Pioneer for, *inter alia*, its alleged negligence in selecting Eagle as a third-party carrier. The Court agrees with other courts that have held that such negligence claims, which operate to impose a general duty of care on market participants across industries, are sufficiently attenuated from the regulation of prices, routes, or services in the transportation industry to avoid preemption. Although the Court acknowledges that imposing a duty of care on brokers may cause them to have to "reallocate resources in order to maintain a particular service level," significantly, the duty says nothing about what services brokers may provide. *Dilts*, 769 F.3d at 648; *see Works*, 2011 WL 9206170, at \*1. Accordingly, the Court finds that Covenant's negligence claim is not preempted by the FAAAA.

The Court recognizes that other courts have held to the contrary. *See, e.g.*, *Miller*, 976 F.3d at 1024 (finding that a negligence claim brought against a broker for negligent hiring was "related to" broker services because plaintiff sought to hold broker liable at the point at which it provides a "service" to its customers); *Alpine Fresh, Inc. v. Jala Trucking Corp.*, 181 F.Supp.3d 250, 257 (D.N.J. 2016) (finding ICCTA/FAAAA preemption because negligent hiring claim was related to the intrastate services of the broker); *Ameriswiss Tech., LLC v. Midway Line of Illinois, Inc.*, 888

F. Supp. 2d 197, 205 (D.N.H. 2012) (finding that negligence claim brought against broker was preempted by the FAAAA); *see also Miller v. Air Van Lines, Inc.*, No. KNLCV075003875S, 2012 WL 6901155, at *7 (Conn. Super. Ct. Dec. 20, 2012) (adopting *Ameriswiss* in finding that "all state laws and causes of action, including actions brought against a broker, are impliedly preempted by the Carmack Amendment and expressly preempted by [the FAAAA] which expressly provides for federal authority over intrastate transportation" (emphasis omitted)); *ASARCO LLC v. England Logistics Inc.*, 71 F. Supp. 3d 990, 1006–07 (D. Ariz. 2014) (finding that the ICCTA/FAAAA preempt broker negligence claims because (1) a "fair and commonsense construction of the term 'services', whether read broadly or narrowly with regard to a 'broker' reasonably leads to no other conclusion than that a broker must find a reliable carrier to deliver the shipment" and (2) "[h]olding a broker responsible for negligence on the instant facts would certainly have more than a tenuous, remote or peripheral effect on rates and services"). However, the Court finds these cases unpersuasive. Some were decided without much explanation or analysis and those for which analysis was provided did not, in the Court's view, sufficiently heed the presumption against federal preemption of traditional state police powers. As the Supreme Court has explained, "because the States are independent sovereigns in our federal system, we have long presumed that Congress does not cavalierly pre-empt state-law causes of action." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996) ("In all pre-emption cases . . . we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." (internal quotation marks and citation omitted)). Accordingly, because "[i]mposing state tort law liability for negligence . . . falls well within the state's historic powers to protect the health, safety, and property rights of its citizens," *In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*, 725 F.3d 65, 96 (2d Cir. 2013), and absent contrary

13

direction from the Second Circuit Court of Appeals, the Court takes the narrower approach to ICCTA/FAAAA preemption that allows shippers to bring common law negligence claims against brokers that breach a general duty of care not otherwise related to prices, routes, or services.[4]

### Implied Preemption under the Carmack Amendment

Pioneer also argues that Covenant's negligence claims are impliedly preempted by the Carmack Amendment. Although the "principal purpose of the [Carmack] Amendment was to achieve national uniformity in the liability assigned to *carriers*," *Rini v. United Van Lines, Inc.*, 104 F.3d 502, 504 (1st Cir. 1997) (emphasis added), some courts find that the Carmack Amendment impliedly preempts negligence claims brought against *brokers* "given [Congress'] interest in standardizing and simplifying the adjudication of claims arising in the context of interstate shipping," *Ameriswiss*, 888 F. Supp. 2d at 207. However, the Court joins the many courts that have found that the Carmack Amendment does not preempt common law claims against brokers because the Carmack Amendment does not apply to brokers. *See Chubb Grp. of Ins. Companies v. H.A. Transp. Sys., Inc.*, 243 F. Supp. 2d 1064, 1069 (C.D. Cal. 2002) (Carmack Amendment does not preempt state law tort actions brought against brokers); *Oliver Prod. Co. v. Foreway Mgmt. Servs., Inc.*, No. 1:06-CV-26, 2006 WL 2711515, at *1–2 (W.D. Mich. May 24, 2006) (finding that the Carmack Amendment does not preempt common law liability of a transportation broker for breach of contract); *Winn Dixie Stores, Inc. v. Aspen Transp., LLC*, No. 6:13-CV-791-ORL-31, 2013 WL 4780125, at *3 (M.D. Fla. Sept. 5, 2013) (finding that the

---

[4] Even if the *Miller* holding were to be followed by the Second Circuit, Covenant's negligence claim, at least in part, would likely still survive the motion to dismiss. Covenant alleges that Pioneer was negligent in not only selecting Eagle as the carrier, but also by limiting and/or attempting to limit Eagle's liability to Covenant. This conduct falls well outside the traditional service provided by a broker, on which the Ninth Circuit relied when it determined that a negligent hiring claim was preempted. *Miller*, 976 F.3d at 1024 (After observing that the selection of a motor carrier is one of the core services of brokers, the court held that "[b]ecause [plaintiff's] negligence claim seeks to interfere at the point at which [the broker] arranges for transportation by motor carrier, it is directly connected with broker services[.]" (internal quotation marks and alterations omitted)).

Carmack Amendment does not preempt tort claims against brokers); *Electroplated Metal Sols., Inc. v. Am. Servs., Inc.*, No. 07 C 409, 2008 WL 345617, at *2 (N.D. Ill. Feb. 7, 2008) (finding that the Carmack Amendment did not preempt negligent brokering claim and noting that "silence as to liability should not be construed as an implicit grant of immunity to brokers"); *Com. Union Ins. Co. v. Forward Air, Inc.*, 50 F. Supp. 2d 255, 257 (S.D.N.Y. 1999) (finding that the Carmack Amendment does not preempt suits against brokers). Pioneer offers no persuasive argument as to why the Court should hold otherwise. *See In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*, 725 F.3d at 96 ("[T]he party asserting that federal law preempts state law bears the burden of establishing preemption."). Covenant's negligence claims are not preempted by the Carmack Amendment.

**Conclusion**

For the foregoing reasons, Pioneer's motion to dismiss Counts III and IV is DENIED.

**SO ORDERED** at Bridgeport, Connecticut, this 16th day of March 2021.

 _/s/ Kari A. Dooley_____
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE