UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| COVENANT IMAGING, LLC,<br>    *Plaintiff*, | No. 3:20-cv-00593 (KAD) |
| v. | |
| VIKING RIGGING & LOGISTICS, INC.,<br>ET AL,<br>    *Defendants*. | September 13, 2021 |

MEMORANDUM OF DECISION RE:
THIRD-PARTY DEFENDANT'S MOTION TO DISMISS (ECF NO. 160)

Kari A. Dooley, United States District Judge:

Pending before the Court is the motion by Third-Party Defendant JC Duggan, Inc. ("Duggan") to dismiss the third-party complaint asserted against it by Defendant/Third-Party Plaintiff Pioneer Transfer, LLC ("Pioneer") pursuant to Fed. R. Civ. P. 12(b)(6). The third-party complaint seeks common law indemnification from Duggan in the event Pioneer is held liable in negligence to Plaintiff Covenant Imaging, LLC. For the reasons that follow, the motion is denied.

**Allegations**

This case arises out of the transportation of an MRI machine, purchased by Plaintiff Covenant Imaging, LLC ("Covenant" or the "Plaintiff"), from Connecticut to North Carolina pursuant to a contract between Covenant and Defendant Viking Rigging & Logistics, Inc. ("Viking").[1] The Plaintiff alleges that Viking brokered the shipment of the MRI machine to Pioneer

---

[1] On March 18, 2021, this Court granted upon stipulation Covenant's motion to dismiss all claims between it and Viking following the parties' settlement of their respective claims. The Court has retained jurisdiction over the settlement agreement for enforcement purposes as may be necessary and appropriate. (*See* ECF No. 146.)

1

without consulting the Plaintiff, and that Pioneer in turn sub-brokered the shipment to Defendant Eagle Express, Inc. ("Eagle"). The MRI machine was ultimately delivered to North Carolina in damaged condition, resulting in a total loss to the Plaintiff. The Court assumes the parties' familiarity with the underlying facts in the operative Second Amended Complaint (the "SAC," ECF No. 99), as set forth more fully in the Court's March 16, 2021 memorandum of decision denying Pioneer's motion to dismiss.[2] (ECF No. 145.)

As relevant here, on March 25, 2021, Pioneer filed a third-party complaint against Duggan in which it alleges that "immediately prior to the MRI's transport, JC Duggan was the rigger responsible for rigging, securing, and affixing the MRI to the transport vehicle, with the expectation that, in doing so, the MRI would remain secure, and undamaged, both during transport, as well as during the rigging process." (Pioneer Compl. ¶ 9, ECF No. 150.) Pioneer thus alleges that "any damage to the MRI was caused by the acts of JC Duggan, not Pioneer." (*Id.* ¶ 11.) It brings one count of common law indemnification against Duggan on the theory that "JC Duggan had sole care, custody, and control of the MRI when the alleged damage occurred" and that "JC Duggan's negligence was the active, direct, and immediate cause of any damage to the MRI, and not the negligence of Pioneer." (*Id.* ¶¶ 12–13.) Duggan has moved to dismiss the indemnification claim, which Pioneer opposes.

**Standard of Review**

On a motion to dismiss under Rule 12(b)(6), the Court "must accept as true the factual allegations in the complaint and draw all inferences in the plaintiff's favor." *Kinsey v. New York*

---

[2] Also pending before the Court is the Plaintiff's motion for leave to file a Third Amended Complaint, in which Covenant seeks to add new allegations regarding a Broker/Motor Carrier Agreement between Eagle and Pioneer, under which Covenant alleges it is a third party beneficiary. (*See* ECF Nos. 167, 168.) Pioneer and Eagle have filed a joint opposition to the motion for leave to amend. (ECF No. 169.) The Court will resolve separately the question of whether Covenant should be allowed to further amend its complaint at this juncture, and the pending motion does not otherwise impact this Court's analysis with respect to the third-party claim asserted against Duggan.

*Times Co.*, 991 F.3d 171, 174 (2d Cir. 2021) (quotation marks, alterations, and citation omitted). The "complaint must 'state a claim to relief that is plausible on its face,'" setting forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Kolbasyuk v. Capital Mgmt. Servs., LP*, 918 F.3d 236, 239 (2d Cir. 2019) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "The assessment of whether a complaint's factual allegations plausibly give rise to an entitlement to relief 'does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal' conduct." *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020) (quoting *Twombly*, 550 U.S. at 556). At this stage "the court's task is to assess the legal feasibility of the complaint; it is not to assess the weight of the evidence that might be offered on either side." *Id*. "Rule 12(b) applies equally to claims, counterclaims, cross-claims and third-party claims, and . . . motion[s] to dismiss . . . [third-party claims] are evaluated under these same standards." *Wine Enthusiast, Inc. v. Vinotemp Int'l Corp.*, 317 F. Supp. 3d 795, 800 (S.D.N.Y. 2018) (internal citation omitted).

**Discussion**

Duggan has moved to dismiss Pioneer's third-party complaint on the grounds that Pioneer has not plausibly alleged that Duggan exercised exclusive control over the situation that gave rise to the damage to the MRI machine—such that Duggan's negligence was the immediate cause of Covenant's alleged injury—as is required to state a claim for common law indemnification.

"Ordinarily there is no right of indemnity or contribution between joint tort-feasors." *Skuzinski v. Bouchard Fuels, Inc*., 240 Conn. 694, 697, 694 A.2d 788 (1997) (quoting *Kyrtatas v. Stop & Shop, Inc*., 205 Conn. 694, 697, 535 A.2d 357 (1988)). "Where, however, one of the defendants is in control of the situation and his negligence alone is the direct immediate cause of the injury and the other defendant does not know of the fault, has no reason to anticipate it and may

reasonably rely upon the former not to commit a wrong," the Connecticut Supreme Court has recognized indemnification as a means of "shift[ing] the impact of liability from passive joint tortfeasors to active ones." *Id*. (quoting *Kyrtatas*, 205 Conn. at 697–98). In these circumstances a plaintiff must allege and ultimately prove four elements to recover under a common law theory of indemnification:

> (1) that the other tortfeasor was negligent; (2) that his negligence, rather than the plaintiff's, was the direct, immediate cause of the accident and injuries; (3) that he was in control of the situation to the exclusion of the plaintiff; and (4) that the plaintiff did not know of such negligence, had no reason to anticipate it, and could reasonably rely on the other tortfeasor not to be negligent.

*Kyrtatas*, 205 Conn. at 698. "'While the question of exclusive control is ordinarily a question of fact to be determined by a jury,' a claim may be dismissed as a matter of law where the allegations, evaluated against the backdrop of the plaintiff's complaint, 'could not result in a jury finding that the third-party defendants were in exclusive control over the situation.'" *Wade v. Kay Jewelers, Inc.*, No. 3:17-CV-990 (MPS), 2018 WL 4440532, at *12 (D. Conn. Sept. 17, 2018) (quoting *Pennsylvania Mfrs. Indem. Co. v. Cintas Fire Prot. & Fire Sys. of Springfield, CT*, No. 3:11-CV-650 (VLB), 2012 WL 3779140, at *5 (D. Conn. Aug. 30, 2012)).

"The Connecticut Supreme Court has stated that 'it is plausible to define exclusive control over 'the situation' as exclusive control over the dangerous condition that gives rise to the accident.'" *Pouliot v. Paul Arpin Van Lines, Inc.*, 367 F. Supp. 2d 267, 271 (D. Conn. 2005) (quoting *Skuzinski*, 240 Conn. at 706). And when determining the nature of "the situation" at issue, courts look to the underlying complaint's allegations, as "it is the grounds alleged in the original complaint that will be the basis for holding [the defendant/third-party plaintiff] liable to the Plaintiff in the first instance." *Pennsylvania Mfrs. Indem. Co.*, 2012 WL 3779140, at *5.

Duggan first argues that the "situation" at issue in this case is Pioneer's alleged negligent brokering of the shipment of the MRI machine to Eagle—an arrangement in which Duggan played

4

no role. The Court disagrees, as such an interpretation conflates the negligence alleged against Pioneer with the dangerous condition itself, when in fact they comprise two separate inquiries. *See, e.g.*, *Pellecchia v. Connecticut Light & Power Co.*, 139 Conn. App. 767, 775, 57 A.3d 803 (App. Ct. 2012) ("In characterizing 'the situation' as [the defendant/third-party plaintiff's] allegedly negligent conduct, as described by the plaintiff in his underlying complaint, the trial court confused such allegedly negligent conduct with the dangerous condition that allegedly exposed the plaintiff's decedent to harm by virtue of such conduct.") Here, a straightforward reading of the Plaintiff's complaint reveals that it was the loading and transport of the MRI machine that damaged Covenant's property—not the brokering among carriers. *See id.*; *see also, e.g.*, *Gugliotti v. Naugatuck Valley Lawn Maint.*, No. UWYCV146025695S, 2016 WL 1444203, at *7 (Conn. Super. Ct. Mar. 23, 2016) ("Being 'in control of the situation' has been interpreted to mean control over the dangerous condition that exposed a plaintiff to harm by virtue of alleged negligent conduct as opposed to control over the negligent conduct itself").

However even assuming that the "situation" can be defined as the mode and method of the actual transport of the MRI machine, Duggan argues that Pioneer has not set forth adequate facts to suggest "that Duggan was in exclusive control of that situation." (Duggan Mem. at 9.) Again, the Court disagrees.

As discussed above, when evaluating the legal sufficiency of a cross-claim or third-party claim seeking indemnification, it is appropriate to look to the underlying complaint's allegations, as "it is the grounds alleged in the original complaint that will be the basis for holding [the defendant/third-party plaintiff] liable to the Plaintiff in the first instance." *Pennsylvania Mfrs. Indem. Co.*, 2012 WL 3779140, at *5. Here, the underlying Second Amended Complaint alleges that "Viking represented itself to Covenant as the actual carrier to whom the machinery was entrusted," that Viking then brokered the shipment to Pioneer, which sub-brokered the shipment to

Eagle, and that "Eagle agreed to retrieve, load, and then transport the Espree MRI from, and through, Connecticut, and ultimately to North Carolina." (SAC ¶¶ 29, 34, 39.) The third-party complaint alleges that "immediately prior to the MRI's transport, JC Duggan was the rigger responsible for rigging, securing, and affixing the MRI to the transport vehicle, with the expectation that, in doing so, the MRI would remain secure and undamaged, both during transport, as well as during the rigging process." (Pioneer Compl. ¶ 9.) Thus, assuming that Covenant prevails against Pioneer in the underlying action, which the Court must do for purposes of assessing the sufficiency of a third-party complaint sounding in indemnification, *see, e.g.*, *Foster v. Foster*, No. X10UWYCV136028741, 2016 WL 3391518, at *8 (Conn. Super. Ct. May 26, 2016), the issue is whether Duggan could be found to have been in control of the rigging and/or transport of the MRI machine to Pioneer's exclusion.

This question must be answered in the affirmative, as Pioneer is alleged to have sub-brokered the shipment under its original contract with Viking, and it is therefore plausible that Duggan (or Eagle) was in control of the situation that harmed the MRI machine while Pioneer merely performed a contractor or supervisory role. While neither the SAC nor the third-party complaint identifies how Duggan was allegedly engaged to perform services in connection with the loading of the MRI machine, as this Court recently found in another case implicating common law indemnification, "the broad allegations pled preclude an unequivocal conclusion of law at this stage—leaving open the alternate possibilities that either [of two entities] may have been in exclusive control . . . or, on the other hand, that neither entity was in exclusive control." *Philadelphia Indem. Ins. Co. v. Enter. Builders, Inc.*, No. 3:20-CV-00056 (KAD), 2021 WL 681148, at *6 (D. Conn. Feb. 22, 2021).

In its reply brief Duggan argues that "[i]f a jury were to find that Pioneer was negligent (i.e. in failing to exercise the requisite care in its hiring or brokering process by, for instance, failing to properly vet those that would be charged with the shipment of the MRI machine), it is an implausible

6

leap to find that Duggan, who by no parties' allegations had a role in that process, was 'in control' of that situation to the exclusion of Pioneer." (Reply at 5, ECF No. 164.)  Again, however, this argument conflates the question of negligence with the question of control and assumes that the negligent hiring/brokering to Eagle and/or Duggan constitutes the dangerous condition, as opposed to the rigging and transport of the MRI machine.  And while Duggan cites this Court's decision in *Philadelphia Indemnity*, 2021 WL 681148, in support of its position, that case is distinguishable.  There, the Court found that if the plaintiff were to succeed in holding the defendant/cross-claimant subcontractor liable for the faulty installation, design, or maintenance of the sprinkler system at issue, it was "wholly implausible" that the cross-defendant general contractor "could be deemed to have been in control of the sprinkler line to the exclusion of [the subcontractor] merely by overseeing [the subcontractor's] work." *Id.* at *6.  The same conclusion does not hold here, as Duggan is not alleged merely to have supervised or overseen Pioneer's (or some other entity's) work; to the contrary, Duggan is alleged to have performed a specific task that rendered the MRI machine insecure and therefore independently caused Covenant's injury.  Whether or not Duggan was in exclusive control of that situation therefore turns on issues of fact that render an ultimate determination improper for resolution at this stage.

**Conclusion**

For the foregoing reasons, the motion to dismiss the third-party complaint is denied.

**SO ORDERED** at Bridgeport, Connecticut, this 13th day of September 2021.

*/s/ Kari A. Dooley*
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE